**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | | |
|---|---|---|
| **EQUILLA ANGENIKA YEARGIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** _____ |
| | ) | |
| **SHARKNINJA OPERATING, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Plaintiff, **EQUILLA ANGENIKA YEARGIN**, (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC**, and **ROGERS PATRICK WESTBROOK & BRICKMAN, LLC**, hereby submits the following Complaint and Demand for Jury Trial against Defendant, **SHARKNINJA OPERATING, LLC** (hereafter referred to as "SharkNinja" or "Defendant"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. Defendant designs, manufactures, markets, imports, distributes and sells a wide-range of consumer products, including the subject "Ninja System With Auto-IQ Technology," which specifically includes the Model BL910 (hereafter referred to as "subject blender" or "Ninja blender(s)") that is at issue in this case.

2. On or about July 20, 2021, Plaintiff suffered serious and substantial laceration injuries as the direct and proximate result of the Ninja blender's blade assembly detaching from the blade base during the normal, intended use of the Ninja blender.

1

3.    The Ninja blenders are defectively designed and manufactured in that the unit's stacked blade assembly does not lock into place and is not secured to the gear shaft. When used in its normal and intended manner by consumers, the blade assembly can fall out of the pitcher, putting the user at risk of sustaining severe lacerations and injuries requiring medical attention. The Ninja blenders pose a safety risk to consumers and to other individuals who may be in close proximity to the Ninja blenders while they are in use.

4.    As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, wage loss, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF EQUILLA ANGENIKA YEARGIN

5.    Plaintiff is a resident and citizen of the City of Anderson, County of Anderson, State of South Carolina.

6.    On or about July 20, 2021, Plaintiff was using the blender designed, manufactured, marketed, imported, distributed, and sold by Defendant SharkNinja for its intended and reasonably foreseeable purpose of blending when she sustained severe laceration injuries as the direct and proximate result of the blender's blade assembly detaching from the blade base during the normal, intended use of the blender. The incident occurred as the result of the Ninja blenders' defect(s), namely, the Ninja blender's use of an unsecured blade assembly.

## DEFENDANT SHARKNINJA OPERATING, LLC

7.    Defendant SharkNinja designs, manufacturers, markets, imports, distributes and sells a variety of consumer products, including the subject Ninja blender.

8.    Defendant SharkNinja Operating LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Massachusetts, whose sole

member is EP Midco LLC, a Massachusetts limited liability company created and organized under the laws of the State of Delaware with its principal place of business in Massachusetts, whose sole member is Global Appliance, LLC, a Delaware limited liability company with its principal place of business in Massachusetts, whose sole member is Global Appliance UK Holdco Ltd., a corporation organized under the laws of the United Kingdom with its principal place of business located in England.  SharkNinja is therefore a citizen of the United Kingdom and England for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

11.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has had sufficient minimum contacts with the State of South Carolina and intentionally availed itself of the markets within South Carolina through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

12.     Defendant SharkNinja is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the blenders at issue in this litigation.

13.     Ninja blenders, including the Ninja blender that injured Plaintiff, essentially have three main components: a base unit which contains a high-speed motor and a gear shaft ("motor base");

3

a pitcher, which locks on to the motor base; and a stacked blade assembly with six sharp blades which is dropped onto the gear shaft ("blade assembly").

14.    To assemble the unit, the user first aligns and lowers the pitcher onto the motor base, then rotates the pitcher clockwise until the pitcher locks into place.  Next the user takes the blade assembly and places it onto the gear shaft.  Once the user has added the desired ingredients, the lid is placed on top of the pitcher and locked into place.



*See* Ninja BL910 Series Owner's Guide, pg. 9.

15.    Unlike the pitcher and the pitcher lid, the blade assembly does not lock into place, and is not otherwise secured to the gear shaft.  Instead, the blade assembly sits "loosely on the drive gear."[1]

16.    As a result the loose blade assembly can easily fall out of the pitcher and onto consumers, resulting in physical injuries such as severe lacerations.

17.    Defendant SharkNinja became aware of this defect as early as November 12, 2015, when, in conjunction with the Consumer Product Safety Commission (CPSC), it recalled roughly 1.1 million of its Ninja BL 660 series blenders for this exact defect.[2]

---

[1] *See* Ninja BL910 Series Owner's Guide, pg. 9.  A copy of the Owner's Guide is attached hereto as "Exhibit A."
[2] *See* the CPSC Recall Notice from November 12, 2015 (https://www.cpsc.gov/Recalls/2016/Laceration-Injuries-Prompt-SharkNinja-to-Recall-Ninja-BL660-Blenders), a copy of which is attached hereto as "Exhibit B."

4

18.    According to the CPSC, the firm received 53 reports of lacerations caused by the stacked blade assembly falling out of the pitcher when consumers poured or inverted the pitcher after removing the lid with the blade assembly still inside.[3]

19.    Despite its knowledge of these defects, Defendant SharkNinja has continued to sell and design blenders with loose, unsecured blade assemblies, including blenders like the BL910 blender involved in this case.

20.    The Ninja blenders have been designed, manufactured, packaged and sold in such a condition that consumers cannot safely use them in the intended manner without risk of physical injury.

21.    By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased the Ninja blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

22.    Plaintiff used her Ninja blender for its intended purpose of preparing food and drinks for herself and/or her family and did so in a manner that was reasonable and foreseeable by Defendant.

23.    However, the aforementioned Ninja blender was defectively designed and manufactured by Defendant in that its loose, unsecured blade assembly is able to fall out of the pitcher during the normal, intended use of the Ninja blender, putting consumers, such as Plaintiff, at risk of lacerations and other physical injuries.

24.    Defendant's Ninja blenders possess defects that make them unreasonably dangerous for their intended use by consumers because the stacked blade assembly does not lock into place and is not otherwise secured to the gear shaft.

---

[3] *Id*.

25.     Economic, safer alternative designs were available that could have prevented the Ninja blender's blade assembly from easily falling out of the pitcher when it is poured or inverted. Examples of such designs include, but are not limited to, securing or affixing the blade assembly to the gear shaft or designing a blade assembly that locks into place.

26.     As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous blender, which resulted in significant and painful bodily injuries.

27.     Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's blender as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY

28.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

29.     At all times relevant, there was in full force and effect certain statutes of the State of South Carolina pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

30.     Pursuant to S.C. Code § 15-73-10 et seq., Defendant is strictly liable in tort, irrespective of privity, for designing, manufacturing, warranting, marketing, importing, distributing, selling, and otherwise placing a defective and unreasonably dangerous product into the stream of commerce, which was the proximate cause of Plaintiff's injuries and damages.

6

31.     At all times relevant herein, Defendant was in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the blenders to consumers, including the subject blender.

32.     At the time they were designed, manufactured, warranted, marketed, imported, distributed, and sold by Defendant, the blenders were defective in their design, manufacture and/or warnings and were unreasonably dangerous for their foreseeable uses.

33.     The subject blender was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

34.     Plaintiff neither misused nor materially altered the subject blender and, at the time of the incident complained of herein, the subject blender was in the same or substantially similar condition as it was in at the time of sale.

35.     At all relevant times, including when the incident alleged herein occurred, the subject blender was used by Plaintiff in an intended and/or foreseeable manner.

36.     As designed, manufactured, warranted, marketed, imported, distributed, and sold, the Ninja blenders at issue were unreasonably dangerous and failed to perform in a manner reasonably expected in light of their intended design, nature, and function, because at the time they were sold or otherwise distributed by the Defendant they were in a condition (a) not contemplated by reasonable persons among those considered expected users or consumers of the blenders; and (b) that was unreasonably dangerous to the expected user or consumer when used in a reasonably expectable way of handling or consumption.

37.     Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the blenders safe. Specifically:

7

a. The blenders designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b. The seriousness of the potential injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the blenders, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendant failed to adequately test the blenders; and

e. Defendant failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

38. Plaintiff did not know at the time of her use of the subject blender, nor at any time prior thereto, of the existence of the defects in the product.

39. Defendant knew or should have known that its blenders created high risk of unreasonable harm to Plaintiff and consumers alike.

40. Despite the fact that Defendant knew or should have known that its Ninja blenders were dangerously defective and could cause the injuries described herein, Defendant continued to market its Ninja blenders to the general public (and continues to do so).

41. As a direct, actual, and proximate result of Defendant's actions and omissions, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

42. Wherefore, Plaintiff requests a judgment against Defendant for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

43.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

44.     The subject blender was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

45.     Plaintiff neither misused nor materially altered the subject blender and, at the time of the incident complained of herein, the subject blender was in the same or substantially similar condition as it was in at the time of sale.

46.     Defendant owed a duty to Plaintiff and other users of their products to exercise due care in the sale and distribution of the Ninja blenders at issue in this case.

47.     Defendant was negligent, careless, and reckless in the design, manufacture, advertising, warning, marketing, and sale of their blenders in that, among other things, they:

   a.   Failed to use due care in designing and manufacturing the blenders to avoid the aforementioned risks to individuals;

   b.   Placed an unsafe product into the stream of commerce; and

   c.   Were otherwise careless or negligent.

48.     Plaintiff did not know at the time of her use of the subject blender, nor at any time prior thereto, of the existence of the defects in the product.

49.     Despite the fact that Defendant knew or should have known that its Ninja blenders were dangerously defective and could cause the injuries described herein, Defendant continued to market its Ninja blenders to the general public (and continues to do so).

9

50.    As a direct, actual, and proximate result of Defendant's actions and omissions, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

51.    Wherefore, Plaintiff requests a judgment against Defendant for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES

52.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

53.    Implied in every sale of goods in South Carolina are the implied warranties of merchantability and fitness for a particular purpose.  *See* S.C. Code Ann. §§ 36-2-314 and 36-2-315.

54.    Defendant is a merchant with respect to the goods at issue, including the subject blender.

55.    Defendant was the seller of the subject blender and, thus, has impliedly warranted that the subject blender which it sold was fit for its ordinary and foreseeable purposes and for the particular purpose for which it was sold.

56.    Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of these warranties.

57.    The subject blender was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

58.    Plaintiff neither misused nor materially altered the subject blender and, at the time of the incident complained of herein, the subject blender was in the same or substantially similar condition as it was in at the time of sale.

10

59.     Plaintiff made ordinary and foreseeable use of the subject blender and Plaintiff relied upon the implied warranties given by Defendant.

60.     Contrary to those implied warranties, Defendant's Ninja blenders were not merchantable and fit for their ordinary purpose because they had the propensity to lead to serious personal injuries as described herein in this Complaint.

61.     Plaintiff used the subject blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

62.     Plaintiff did not know at the time of her use of the subject blender, nor at any time prior thereto, of the existence of the defects in the product.

63.     As a direct, actual, and proximate result of Defendant's breach of its warranties, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

64.     Wherefore, Plaintiff requests a judgment against Defendant for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**PRAYER FOR RELIEF**

65.     WHEREFORE, Plaintiff prays as follows:

   a.  Judgment against Defendant;

   b.  For sums as actual and other compensatory damages, including pain and suffering and permanent impairment, in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

   c.  For the costs of this suit, including attorney's fees; and

   d.  For such other and further relief to which she may be entitled, that this Honorable Court deems just and proper.

11

## JURY DEMAND

66.    Plaintiff hereby demands a trial by jury pursuant to Rule 23, SCRCP.


Respectfully submitted,

Dated: June 10, 2024                    By:  */s/Elizabeth Middleton Burke*
                                        Elizabeth Middleton Burke (Fed. I.D. 7466)
                                        Misty Black O'Neal (Fed. I.D. 12262)
                                        **ROGERS PATRICK WESTBROOK &
                                        BRICKMAN, LLC**
                                        1037 Chuck Dawley Blvd., Bldg. A
                                        Mount Pleasant, SC 29464
                                        Ph:        (843) 727-6500
                                        Fax:       (843) 216-6509
                                        bburke@rpwb.com
                                        moneal@rpwb.com

                                        *In association with*:

                                        **JOHNSON BECKER, PLLC**

                                        Adam J. Kress, Esq.  (MN #0397289)
                                        *Pro Hac Vice to be filed*
                                        Anna R. Rick, Esq. (MN #0401065)
                                        *Pro Hac Vice to be filed*
                                        444 Cedar Street, Suite 1800
                                        St. Paul, MN 55101
                                        (612) 436-1800 / (612) 436-1801 (f)
                                        akress@johnsonbecker.com
                                        arick@johnsonbecker.com

                                        *Attorneys for Plaintiff Equilla Angenika
                                        Yeargin*

12